McConvill v. Mayor, &c., of Jersey City.

---

PATRICK McCONVILL v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

CHARLES SNOWDEN AND PATRICK McCONVILL v. THE SAME.

The Board of Aldermen of Jersey City, acting under the charter of 1871, (*Pamph. L.*, 1871, *p.* 1094), passed the following ordinance: " SEC. 1. No person or persons shall drive, or cause to be driven, any drove or droves of horned cattle, (except milch cows), through any of the streets, avenues, &c., in Jersey City. SEC. 2. That any person, &c., that shall violate the provisions of this ordinance, shall, for every such offence, forfeit and pay the sum not exceeding $50." Sec. 24, pl. 5, of the charter, authorized the board to pass ordinances to regulate and control the driving of cattle, &c., through the streets, &c., of the city. *Held*—

1. That the ordinance in question is not bad for uncertainty in the penalty.

2. That it is bad for vagueness and uncertainty in the thing forbidden.

3. That if the effect of it is effectually to prohibit, &c., it is void, for the additional reason that the board had, by their charter, no authority to make such an ordinance.

On *certiorari* to remove an ordinance of the Board of Aldermen of the city of Jersey City.

Argued at June Term, 1876, before Justices WOODHULL and REED.

For the prosecutors, *J. B. Vredenburgh* and *I. W. Scudder*.

For the defendants, *Leon Abbett*.

The opinion of the court was delivered by

WOODHULL, J.    These writs have been brought to test the validity of an ordinance passed by the Board of Aldermen of Jersey City, April 4th, 1876, and which went into effect, without the approval of the mayor, May. 1st, 1876, entitled " An ordinance to regulate and control the driving of cattle through the streets of Jersey City."

Section 1 provides that no person or persons shall drive, or cause to be driven, any drove or droves of horned cattle, (except milch cows), through any of the streets, avenues, lanes, alleys or public places in Jersey City.  Section 2, that any person or persons, body or bodies corporate, their servants or agents, that shall violate the provisions of the ordinance, shall, for every such offence, forfeit and pay the sum of not exceeding $50.

It is urged on the part of the prosecutors, that this ordinance is void : 1. For want of power to pass it.  2. For uncertainty as to the offence intended to be prohibited.  3. For uncertainty in the penalty.

The defendants claim that the ordinance is authorized by the provisions of Section 24 of the city charter, (*Laws*, 1871, *p.* 1106,) which enacts that the Board of Aldermen shall have power to pass, alter or repeal ordinances to take effect within

said city, for the following purposes :    *    *    *    " Fifth, to prevent horses, cattle, sheep, dogs, swine, goats, geese, ducks and other animals from running at large in streets or public places in said city, and for the impounding, sale or destruction of the same ; and to regulate and control the driving of such animals through the streets and public places of the city. *    *    *    Fifteenth, to prescribe the penalties by fine not exceeding $50, in each case, or by imprisonment in the city prison, not exceeding ten days, in each case, or both, for any violation of any ordinance authorized by the act."

The case presents three questions, which will be considered in the order stated.  1. Does the ordinance prescribe, with sufficient certainty, the penalty for its violation ?  2. Does it sufficiently define the offence intended to be prohibited ?  3. Had the Board of Aldermen power to pass it ?

1. Upon the first question, the authorities do not appear to be entirely agreed.·  It has been said, by a writer of acknowledged ability on the law of corporations, that the penalty annexed to the breach of a by-law, must be in a sum certain, and not left to the arbitrary assessment of the makers of the law, according to circumstances, even though the utmost extent of the sum be limited.  2 *Kyd on Corp.* 157.

. A somewhat later writer, treating of the method of enforcing by-laws founded on custom, remarks that the penalty must not only be reasonable, but must be certain, and that if the by-law leaves the admeasurement of it to the discretion of the governing part of the company for whose use it is recoverable, it is void, for that would be allowing the plaintiff to assess his own damages.  *Willcock on Mun. Corp.* 154, § 368, (14 *Law Lib.* 85.)

Chief Justice Cooley, speaking of municipal by-laws, says : " A by-law, to be reasonable, should be certain.  If it affixes a penalty for its violation, it would seem that such penalty should be a fixed and certain sum, and not left to the discretion of the officer or court which is to impose it, on conviction ; though a by-law imposing a penalty *not exceeding* a certain sum, has been-held not to be void for uncertainty."    *Con.*

*Lim.* 202. See also *Angell & Ames on Corp.* \*426; *Grant on Corp.* \*84.

In *Piper and others* v. *Chappell*, 14 *M. & W.* \*624, one of the questions arising on a demurrer to the declaration, was as to the validity of a by-law of the Plumbers' Company, to which the penalty annexed was " the sum of £5, or less, at the pleasure and discretion of the master and wardens, so it be not less than 40s."

To this, it was objected that the penalty was arbitrary, whereas it ought to have been certain, not varying at the will and pleasure of the persons who were to receive it. Parke, B., delivering the judgment of the court, said : " The only case which we have been able to find, bearing on this question, is that cited on the argument for the plaintiff, viz., *Wood* v. *Searl, Bridg.* 139, in which the penalty was such a sum as the master, wardens, &c., should assess, not exceeding 40s. ; but this case is no authority either way, for the by-law was held to be bad, and it might have been so held upon other objections, or upon this. In the absence of any other authority to the contrary, we do not see any objection to this mode of fixing the penalty. It is a certain penalty of £5, with a power of mitigation not below £2, and we do not think this is unreasonable."

In *Mayor and Aldermen of Mobile* v. *Yuille*, 3 *Ala.* 137, an ordinance to regulate the weight and quality of bread, which authorized the mayor to condemn, &c., and also to fine the offender in a sum not exceeding $50, was held bad for uncertainty in the penalty. But the decision in this case has been overruled by the later case of *Mayor and Aldermen of Huntsville* v. *Phelps*, 27 *Ala.* 55, in which the same court sustained a precisely similar ordinance. Judge Dillon, referring to this and other cases, states the true doctrine to be that " a municipal corporation with power to pass by-laws and to assess penalties, may, if not prohibited by the charter, or if the penalty is not fixed by the charter, make it discretionary within fixed limits, for example, ' not exceeding fifty dollars.' " " This," he says, " enables the tribunal to adjust

the penalty to the circumstances of the particular case, and is just and reasonable. The older English authorities, so far as they hold such a by-law void for uncertainty, are regarded as not sound in principle, and ought not to be followed." *Dill. on Mun. Corp.*, § 275. This is the latest statement of the law that I have noticed upon the point now under consideration, and it seems to me to be better supported, both by reason and authority, than the doctrine of the earlier writers, which rested almost entirely upon the supposed authority of the old case of Wood *v.* Searl.

The decision of this court in *State* v. *Zeigler*, 3 *Vroom* 262, does not appear to me to be in conflict with the rule as stated by the learned author just referred to.

That case, so far as it bears upon the point in question, is merely to the effect that where the charter authorizes the council to enforce their ordinances by penalties not exceeding $50, to be recovered by *an action of debt*, the council must prescribe a precise penalty for each offence, for the reason that the action of debt given by the charter, can only be maintained for a sum capable of being ascertained at the time of the action brought.

As there is nothing in that case, nor, so far as I know, in any other, requiring us to sanction a rule which would preclude any attempt " to adjust the penalty to the circumstances of the particular case," my conclusion is, that the objection to this ordinance, on the ground of uncertainty in the penalty, is not sustained, and that the first question must be answered in the affirmative.

2. The next question is, does the ordinance sufficiently define the offence which it was designed to prohibit?

It has been well said that a by-law ought to be expressed in such a manner as that its meaning may be unambiguous, and in such language as may be readily understood by those upon whom it is to operate. *Grant on Corp.* 86. The same thing may be said of all laws, but the remark has a special significance as applied to such as are penal in their character.

" It is impossible," says Mr. Dwarris, " to dissent from the

doctrine of Lord Coke, that acts of parliament ought to be plainly and clearly, and not cunningly and darkly penned, especially in penal matters." *Dwar. on Stat.* *652.

Brought to the test of these principles, the ordinance in question must, as it seems to me, be pronounced bad for vagueness and uncertainty in respect to the thing prohibited.

It simply forbids the driving of any *drove* or *droves* of horned cattle, &c. Assuming the ordinance to be merely for the regulation and restraint, within reasonable limits, and not for the entire prohibition of the driving, &c., what are the limits within which such cattle may be driven through Jersey City?

No person shall drive any *drove* or *droves*, &c., but how many cattle may be driven, &c., without incurring the prescribed penalty? If more than one at one time, how many more? A drove is defined by Webster to be " a collection of cattle driven; a number of animals, as oxen, &c., driven in a body." " We speak," he says, "of a herd of cattle, and a flock of sheep, when a number is collected; but properly, a *drove* is a herd or flock *driven.*"

It cannot escape observation that the very words here used to describe or define the meaning of drove, namely, *collection, number, body, herd, flock,* are all of them essentially indeterminate, each one, as well as the word they are employed to explain, merely conveying the idea of an aggregation of units, without furnishing the slightest hint in answer to the question, how many?

There is nothing in the testimony to show that the word *drove* is used in any more definite sense by butchers and cattle dealers. The contrary is plainly indicated by the fact that the witnesses belonging to these classes, without exception, regarded the ordinance as designed to be, and as being in fact, an entire prohibition of the driving of cattle through the streets of the city. But they could not have so regarded it if the word *drove* had conveyed to their minds the idea of a definite number of cattle. If, for example, they had been accustomed to use the word as signifying ten or more, they

would not have considered themselves prohibited from driving any number less than that. The same view as to the effect of this ordinance having been taken by the counsel on both sides on the argument, it is safe to conclude that while it does not, in terms, entirely prohibit the driving, &c., it does in fact amount to that. But the power to regulate and control does not, in the sense of the city charter, include the power to prohibit. Whenever the charter intends to confer this power upon the Board of Aldermen, it does so in express terms. *Laws*, 1871, § 24, *p.* 1107, *pl.* 1, 7, 8, 13, 14.

That the charter does not give this power, is further evident from the provision which empowers the Board of Aldermen to license and regulate slaughter-houses, which are thus recognized as existing and lawful establishments within the bounds of the city. *Id.*, § 24, *pl.* 1.

All such establishments they may license and regulate, but cannot entirely prohibit. But if they may prohibit the driving of cattle to them, the board would manifestly have the power to effect by indirection what the charter will not permit them to do directly.

The only other consideration which I shall mention as showing the want of power to prohibit is, that the words *regulate* and *control* do neither necessarily nor properly imply prohibition.

To regulate and control the driving of cattle, &c., cannot mean to prevent such driving altogether, but to establish rules and limits, according to and within which it may be done.

For the reasons above indicated, my conclusions upon the whole case are: 1. That the ordinance in question is not bad for uncertainty in the penalty. 2. That it is bad for vagueness and uncertainty in the thing forbidden; and 3. That if the effect of it is virtually to prohibit, &c., it is void, for the additional reason that the board had, by their charter, no authority to make such an ordinance.

The ordinance itself, therefore, and the proceedings under it brought up by these writs, must be set aside, with costs.