HARRY HAMMOND, PROSECUTOR, v. BOARD OF ALDER-
MEN OF THE CITY OF PATERSON, RESPONDENT.

HARRY HAMMOND, RELATOR, v. BOARD OF ALDERMEN
OF THE CITY OF PATERSON, RESPONDENT.

Submitted October 3, 1939—Decided January 11, 1940.

Before Justices TRENCHARD, CASE and HEHER.

For the prosecutor and relator, *Aaron Heller*.

For the respondent, *Charles F. Lynch* and *Salvatore D.
Viviano*.

The opinion of the court was delivered by

TRENCHARD, J.   On May 2d, 1938, and again on August
15th, 1938, the Board of Aldermen of the city of Paterson,
respondent, refused to issue a junk yard license to the prose-
cutor.   The prosecutor was allowed a writ of *certiorari* to
review such action and a rule to show cause why a peremptory
or alternative writ of *mandamus* should not issue.   By stipu-
lation both causes were argued and considered together upon

the same record. The prosecutor of the writ now contends that (1) respondent's action was arbitrary and unreasonable, and (2) respondent's action was not supported by evidence, and deprived prosecutor of his constitutional rights.

We think such contentions are without merit.

The record discloses that on April 6th, 1938, the city of Paterson adopted "An ordinance to license and regulate junk yards in the city of Paterson," and such ordinance was thereafter continuously in effect. Section 1 thereof ordained "That no person or persons, firm or corporation shall engage in the business of keeping a junk yard, that is no person or persons, firm or corporation, shall keep and maintain a yard, covered or uncovered, space or place, in the city of Paterson, for the purpose of buying and selling, exchanging or storing rags, old metals, old bottles, old glassware, old tinware, old paper, old lumber, old plumbing fixtures, dismantled old automobiles or parts thereof, motor vehicle junk, or any other old material commonly called junk, without being licensed so to do by the Board of Aldermen of the City of Paterson, provided, however, this shall not prohibit the storage of old material to be used by the person or persons, firm or corporation, storing the same for manufacturing purposes."

It is not contended that the city lacked power to enact such ordinance. The legislature has the power to require a license to keep a junk yard, for the purpose of regulating the conduct of it, as the public interests may lawfully demand. *State* v. *Kievman,* 116 *Conn.* 458; 165 *Atl. Rep.* 601; 88 *A. L. R.* 962. Such was the purpose of the present ordinance. Therein it is provided (among other things) that the licensee shall at all times maintain such premises in a safe and sightly manner with due regard to the public safety of persons and property in the vicinity in which the junk yard is located. The legislature is vested with a large discretion to determine not only what the interests of the public welfare require, but also what measures are necessary to secure such interests.

We believe that the refusal of the respondent board to grant the junk yard license in the present case was a reasonable exercise of the police power and in the public interest within the power granted.

The evidence discloses (without substantial dispute) that on April 6th, 1938, when the ordinance in question took effect, the prosecutor was already operating a junk yard on the premises without a license since none was theretofore required. On May 2d, 1938, when his first application for a junk yard license was considered by the board, the application was denied after full hearing.

On August 15th, 1938, prosecutor again applied for a license, and was again denied, unanimously, after hearing, and the record discloses an admission by the prosecutor that he and his counsel were given an opportunity to be heard before the matter was determined by the full board.

The evidence clearly shows that the determination of the respondent board was based on substantial facts brought to its attention by the interested parties at the hearings. It shows that the application was denied on the ground that it would be detrimental to the health and a menace to property owners who reside in the immediate vicinity of the junk yard; it shows that the immediate neighborhood consists mostly of homes, occupied by the owners themselves; it shows that the prosecutor conducted his business seven days of the week, both inside the yard and outside on the streets and gutters adjoining the property, and a traffic hazard was thus created; it shows that the neighborhood was thus made definitely noisy on Sundays as well as upon other days; it shows that as conducted it was a moral hazard to the families of the neighbors, necessitating calls for the police to arrest degenerates who at times slept in the partly dismantled cars; it shows that sledge hammers were used in dismantling automobiles on Sundays; that junk is stored on the property, rubbish was burned upon the premises, and that the junk yard was infested with rats.

It is manifest from the foregoing practically uncontradicted evidence that the board was justified in denying the applications of the prosecutor for a junk yard license.

It is said that before the ordinance was enacted and before such applications were made, the prosecutor's father purchased an interest in the junk yard and business, relying upon some indefinite and casual information that no license

was required. And it is suggested by the relator, therefore, that the respondent should be required to grant the permit. Not so. Such alleged information did not come from the respondent nor from the city. Neither the city nor the respondent induced the alleged purchase and neither was a party thereto.

The "decision" of the respondent denying the permit will be affirmed, and the rule to show cause discharged, with costs.