EDWARD PFISTER, RELATOR-PROSECUTOR, v. THE MUNICIPAL COUNCIL OF THE CITY OF CLIFTON, RESPONDENT-DEFENDANT.

Argued January 17, 1945—Decided July 24, 1945.

Before CHIEF JUSTICE, BROGAN and Justices DONGES and PERSKIE.

For the relator-prosecutor, *Aaron Heller*.

For the respondent-defendant, *John G. Dluhy*.

The opinion of the court was delivered by

DONGES, J. These cases are before the court on a writ of *certiorari* to review a resolution of the governing body of the City of Clifton denying relator-prosecutor's application for a license to operate a junk yard, so-called, or automobile reclaiming yard, and on a rule to show cause why a writ of *mandamus* should not issue to compel the issuance of the license sought.

*R. S.* 39:11–1, *et seq.*, provides that where such businesses as that which the prosecutor seeks to operate are located adjacent to or are visible from a state highway (as the *situs* in question is) a license must be obtained from the Motor Vehicle Commissioner. Before application may be made to the Commissioner a permit must be obtained from the governing body or zoning commission of the municipality in which the yard is proposed to be located. The statute provides for a hearing by the .local body and that no permit shall be issued unless the local body "find that no unreasonable depreciation of surrounding property would ensue from the establishment or maintenance of the motor vehicle .junk yard or business and that the best interests of the community require the operation of the yard or business at the location designated. The proximity of schools, churches or other places of public gatherings, the sufficiency in number of other similar places in the vicinity

and the suitability of the applicant to receive the license, shall be taken into consideration in considering the application."

The City of Clifton has an ordinance providing for the licensing of "Junk Yards" and the ordinance classifies unregistered motor vehicles unfit for reconditioning and used parts of motor vehicles as "Junk" within the meaning of the ordinance. The ordinance provides that, in the case of yards adjacent to a state highway, coming within the provisions of the above statute, an applicant must first secure the license from the Motor Vehicle Commissioner before a municipal license may issue.

The city now contends that the prosecutor has not complied with the ordinance in that he has not first secured the state license. It seems to us, however, that the application of the relator to the municipality must be considered as the application for local approval as to the site as required by the statute before the Motor Vehicle Commissioner may act upon the matter. The city governing body treated it as such, apparently, for it proceeded to hold a hearing following notice to property owners within 200 feet. It is evident from the testimony given by the mayor on the depositions that the members of the governing body reached their conclusion upon a finding that the establishment of the yard would result in unreasonable depreciation of surrounding property, that the best interests of the city would not be served and that they did not desire to license any more junk yards in the city. These are matters that *R. S.* 39 :11–5 requires them to determine, so it is apparent that the municipality treated prosecutor's application as one made for preliminary consent, as required by the statute, and acted accordingly. It will be so regarded by us.

The remaining question is whether or not the refusal of the permit was justified. In *Resciniti* v. *Belleville,* 117 *N. J. L.* 1, it was held that the refusal of a license to operate a junk yard, under a regulatory ordinance, must be based on a regulation which must be designed to promote the public health, safety and general welfare. So we consider the determining question in this case to be whether or not the operation of a junk yard on prosecutor's property would be detrimental to the public health, safety and general welfare of the community.

A determination of this question requires a consideration of the location and character of the property. The property is approximately rectangular in shape about 400 feet wide at one end, about 500 feet wide at the other end, and approximately 600 feet long. On the west it is bounded by the right of way of the Newark Branch of the Erie Railroad and on the east side by the right of way of the Boonton Branch of the Delaware, Lackawanna and Western Railroad. On the south it is bounded by a large tract of farm land beyond which, some 770 feet from the southern boundary of prosecutor's land, are the factory buildings of the Athenia Steel Company. The north of the tract abuts on state highway Route 6, which highway at this point and along the entire width of the tract is elevated above surrounding ground level in order to provide overpasses of the two railroads. It is said in the testimony that the roadway is forty or fifty feet above the level of prosecutor's tract of land, and whether this be accurate or not, it is evident from the photographs in evidence that an embankment of considerable height extends the width of the tract. It has been necessary for prosecutor to fill in an inclined driveway from his lot up to the highway level in order to have access to the lands. To the west, about 1,000 feet along Route 6, are lands devoted to industrial use upon which are eight large oil tanks, erected a considerable height above ground level.

The nearest dwelling to the tract is that of one George Max who operates the farm land to the south and also farm land across the Delaware, Lackawanna and Western tracks to the east. His home is across the tracks from prosecutor's land and is about 350 feet away from it to the nearest point, which is toward the rear or south, not the section where prosecutor proposes to conduct his business. Another group of residential properties is farther away to the east along Parkway Avenue. The nearest of these is some 500 feet away from the extreme rear of prosecutor's land. The home of Smith, one of the objectors, is on the far or north side of Route 6, about 400 feet distant, and there is, of course, between this building and the lot in question the high embankment of the highway.

The property is zoned by the Clifton zoning ordinance for industrial purposes. The property is certainly one that is not desirable for residential purposes and it is difficult to think of many purposes for which it is adapted.

While this is not a zoning case, the principles of law applicable are the same as those in cases arising under zoning ordinances. The refusal to permit prosecutor to devote his land to a lawful purpose must be within the valid exercise of the police power and must have relation to the public health, safety or general welfare. *Rescinili* v. *Belleville, supra.* Restricting the use of property beyond the proper exercise of the police power amounts to depriving the owner of his property. *Vassallo* v. *Orange,* 125 *N. J. L.* 419. The prosecutor is entitled to apply his land to the use for which it is best suited. *Gabrielson* v. *Borough of Glen Ridge,* 13 *N. J. Mis. R.* 142.

An examination of the proofs leads to the conclusion that there is no valid objection to the proposed use of this property and that the objections made are really based upon aesthetic considerations. As stated it is zoned for industrial use and is so peculiarly located as to be susceptible of very limited uses. To deny prosecutor the permission now sought would be to deprive him of one of the few uses to which he could devote the land. "Aesthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation." *Passaic* v. *Paterson Bill Posting Co.,* 72 *N. J. L.* 285; *O'Mealia Outdoor Advertising Co.* v. *Rutherford,* 128 *Id.* 587; *Mansfield & Swett, Inc.,* v. *Town of West Orange,* 120 *Id.* 145.

We conclude that in the circumstances of this case the denial of permission to operate a junk yard at the place in question was unreasonable and not within the police power of the municipality. The resolution is set aside and a peremptory writ of *mandamus* allowed.