JOSEPH CHAIET, TRADING AS ORANGE USED CAR COM-
PANY, STEWART A. STONE, JAMES V. LIBERTY AND
NEW JERSEY USED CAR TRADE ASSOCIATION, A COR-
PORATION OF NEW JERSEY, PROSECUTORS, v. CITY
OF EAST ORANGE, NEW JERSEY, A MUNICIPAL CORPO-
RATION, DEFENDANT.

Argued October 8, 1947—Decided January 14, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the prosecutors, *Milton M. Unger, Adrian M. Unger*
and *Henry Gottfried.*

For the defendant, *Walter C. Ellis.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The City of East Orange has
ordinances which, read together, require those who would en-
gage in the business of selling or exchanging automobiles on
open lots to obtain a license to do so, to pay a license fee of

$300 if the area is not more than 10,000 square feet or $500 if the area exceeds that square footage and within ten days after the license is granted to enclose the area by a fire proof fence not less than eighteen inches in height without openings except where the street curb has been lowered in accordance with the rules of the engineer's office. Prosecutors assert that new cars are sold only from showrooms, wherefore the ordinances in actual practice apply only to "used car lots;" a conclusion which may be conceded without weakening the defendant's case.

Three of the prosecutors, severally, come within the application of the ordinance provisions and deny the legality thereof upon the grounds, first, that they are discriminatory and, second, that they are without or are contrary to statutory authority. We shall discuss these grounds in reversed order. Prosecutors do not deny that the power to license businesses generally is lodged with the municipality. Their contention is that the *prima facie* right of the city is superseded by the imposition of state licenses upon the same business function.

In the year from June 1st, 1946, to May 31st, 1947, in the City of East Orange, there were twenty-one licensed open lot enterprises of the kind here considered. The number of sales by the several licensees is variable. One dealer testified that he sold about 400 cars during the year. Others refused to say. The bulk of the sales occur during the "season"—April, May, June and part of July. It is obvious that there must be much activity during certain periods and on certain days. The fire hazard, the theft hazard, the protection of pedestrians from promiscuous driving of cars from any point across the sidewalk, the danger to passing traffic of promiscuous entrance and exit of cars, the sanitary hazard where no toilets are maintained, the general confusion of such a business when not supervised and restricted serve to present a fit, almost a necessary, subject for the exercise of a degree of municipal control and an appropriate one for imposing a fee which is commensurate with the occasion for additional municipal expenses.

The general authority of a municipality to license and regulate businesses by ordinance and to impose fees thereon for

revenue is contained in *R. S.* 40:52–1 and 2. The statute contains a provision, however, that nothing therein shall be construed to authorize or empower a municipality to license or regulate any person holding a license or certificate issued by any department, board, commission or other agency of the state; and prosecutors contend that the last mentioned provision nullifies the ordinance power of the defendant municipality for the reason that prosecutors hold two sets of state licenses or certificates, one under *R. S.* 39:10–1, *et seq.,* and other under *R. S.* 39:3–18.

The first of those statutes, *R. S.* 39:10–1, provides in section 19 that no person shall engage in the business of buying, selling or dealing in motor vehicles in this state unless he is authorized to do so and that the licensing shall be exercised by the Commissioner of Motor Vehicles. Formerly the fee was $10 and now, by the amendment of chapter 136, *Pamph. L.* 1946, it is $100; but the fee is paid only on the initial issuing of the license and not on the issuing of the annual renewal. The purpose of the statute is stated in section 3 thereof (*R. S.* 39:10–3) as follows:

"This chapter shall be so interpreted and construed as to effectuate its general purpose to regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state."

It is clear that the licensing authority of the Commissioner is for a different purpose and within a different field than is that of the municipality under the questioned ordinances. (*Cf. Mills* v. *Mosher,* 128 *N. J. L.* 546; *Spiro Drug Service, Inc.,* v. *Union City,* 130 *Id.* 1; *affirmed, Id.* 496.) The state license may be said generally to institute a system of supervision by which the business may be compelled to be operated in good faith with the automobile laws of the state and the purchasing public with a relatively nominal and non-recurring initial issuance charge. The municipal ordinances have to do with local police problems and the cost thereof. Our decision runs on the theory that the state license is a regulatory control over the operation of the business as such and that the munici-

pal license is directed solely toward policing problems and the recovery of commensurate revenues. We discover no discrimination in the bare fact of requiring businesses on open air lots to procure a license, no ulterior purpose, no design to favor local merchants as against outsiders, no scheme to protect one plan against another for the doing of business. (*N. J. Good Humor, Inc.,* v. *Bradley Beach,* 124 *Id.* 162; *The Great\ A. & P. Tea Co., Inc.,* v. *Camden,* 122 *Id.* 47.) The ordinances are general in character and reasonably cover a definite class. *Van Der Vliet* v. *Newark,* 112 *Id.* 39; *Wagman* v. *Trenton,* 102 *Id.* 492; *Kolb* v. *Boonton,* 64 *Id.* 163.

The weakness of prosecutors' contention that because a license from the state is required in the operation of their business therefore no municipal license may be required, however divergent in purpose and effect the latter may be, is manifest from the further branch of the argument, which is that also *R. S.* 39:3–18 constitutes such a licensing of motor vehicle dealers by the state as, under *R. S.* 40:52–1, *supra,* deprives the municipality of its licensing power. There are few businesses which do not involve the use of automobiles and therefore the holding of registration licenses and the use of license plates. *R. S.* 39:3–18 is an enactment which favors motor vehicle dealers in that respect by granting registration privileges not conceded to the ordinary car user and owner. The statute provides that a motor vehicle dealer may procure for a total cost of $25 general registration and plates in quintuplicate sets, attachable as occasion may require to any motor vehicle operated exclusively for the licensee's business. The contention that this concession to the peculiar nature and requirements of the dealer in motor vehicles is such a license by the state as invokes the prohibition against municipal licensing of open air sale operations is plainly devoid of merit; so much so that it serves to illustrate the purpose of the prohibitory paragraph in *R. S.* 40:52–1, *supra,* which, as we deduce, is to forbid a parallel licensing operation by both state and municipality.

For the reasons stated, we think that the licensing features of the ordinances are within the authority given in *R. S.* 40:52–1 and are not within the prohibitory clause of that statute.

Prosecutors further argue that the ordinances are illegal because they are arbitrary and discriminatory in that they apply only to the sale of cars from open lots and do not apply to the sale of cars from buildings and in that they require the open air car lots to be enclosed by a fire proof fence not less than eighteen inches in height. We have already discussed the substance of the point in part. The purpose of the fence is apparent. It is to mark off the area and to prevent the driving of the cars upon the sidewalk space or across the sidewalk to and from the street except at the fixed exits and entrances, a requirement which we think is in reasonable protection of the convenience and the safety of sidewalk pedestrians and of users of the highway. It may be said that the business of a dealer in motor vehicles when conducted in a building receives some comparable services as by way of fire and police protection. But the tax upon the building carries the *pro rata* share of the cost of those services whereas the mere ground tax is not predicated upon so complete a service. The open air business has the advantages of location and of recourse to expensive municipal undertakings without carrying its full share of the cost burden. We conclude that the point is not well made.

The sales from at least some of the open lots appears to have been heavy. We are unable, from the proofs, to determine that the amount of the fees is confiscatory or unreasonable. The burden of proof thereon is on the prosecutors. *American Grocery Co.* v. *Board of Commissioners of the City of New Brunswick,* 124 *N. J. L.* 293. There is a presumption that a duly adopted ordinance is reasonable. *Hoffman* v. *Mayor, &c., Borough of South River,* 13 *N. J. Mis. R.* 618.

The writ of *certiorari* will be dismissed, with costs.