18 N.J. Super. 503 (1952)
87 A.2d 729
SALVATORE MESSINA, PLAINTIFF-APPELLANT,
v.
THE MAYOR AND COUNCIL OF THE BOROUGH OF LODI, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1952.
Decided April 1, 1952.
*504 Before Judges McGEEHAN, JAYNE, and GOLDMANN.
*505 Mr. Martin Klughaupt argued the cause for appellant.
Mr. Alfred D. Schiaffo argued the cause for respondent (Mr. John M. Di Maria, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
On August 13, 1934, the Mayor and Council of the Borough of Lodi duly passed an ordinance entitled "An ordinance to provide for licensing junk shopkeepers and junk dealers and regulating the place and manner in which such business shall be conducted." Section 1 of the ordinance reads:
"Section 1. No person, firm or corporation shall place or permit to be placed, store or permit to be stored, gather in quantities, accumulate, pile or permit to be piled, collect in a mass or permit to be collected in a mass, any old iron, old steel, old or condemned cable and cordage, worn out discarded and wrecked materials, old chain, iron, copper, brass, parts of machinery, and parts of automobile wrecks in a junk yard or junk shop within the limits of the Borough of Lodi without first obtaining a license therefor from the Mayor and Council of the Borough of Lodi."
On July 12, 1937, the following supplement was attached to the ordinance:
"Section 1. There shall be granted by the Mayor and Council of the Borough of Lodi not more than four licenses for any junk shop keeper or junk yard dealer within the limits of the Borough of Lodi until the population thereof shall exceed 25,000 in number."
Four licenses were issued and the population of the borough is about 15,000. In these circumstances the plaintiff on June 11, 1951, made application to the mayor and council for such a license contemplating the maintenance of a storage yard on a portion of his premises at No. 99 Dell Glen Avenue in the heart of the industrial zone as delineated by the zoning ordinance of the borough.
The plaintiff's application was denied by the mayor and council on July 2, 1951, solely because of the existence of *506 the four licenses previously granted and the numerical limitation expressed in the ordinance as supplemented.
A proceeding in the Law Division of this court to review the action of the governing body and to obtain a judgment directing the issuance of the license was thereupon prosecuted by the plaintiff. The judgment sustaining the action of the borough officials is the subject of the present appeal.
In consulting the agreed statement in lieu of record we are informed of the acknowledged facts that:
"* * * The nearest residence is 500 to 600 feet away. The premises are bounded by the Saddle River, Park Place, Dell Glen Avenue, and the large heavy industrial plant of the United Piece Dye Works. Immediately adjacent the premises in question is a large industrial storage tank 25' high and approximately 150' in diameter. The property in question has as its immediate neighbors, the large United Piece Dye Works plant, a factory manufacturing detergents and waterproof paints, a tractor shop, a warehouse, and an iron and steel works. The premises are not desirable for residential purposes, and are of limited use.

* * * * * * * *
If the license sought by the plaintiff were not barred by the limitation ordinance, the land in question could be put to the proposed use under the Zoning Ordinance without amendment or exception.

* * * * * * * *
Of the four licenses issued by the Mayor and Council, only three are in use."
The judge of the Law Division concluded:
"1. Although the operation of a junk yard is not a nuisance per se, a municipality has the power and right to limit their number, according to population, and the ordinance under attack is valid."
The Legislature has expressly conferred the power and authority upon local municipal governing bodies to adopt ordinances "to license and regulate" junk shop keepers, junk dealers, motor vehicle junk dealers. R.S. 40:52-1.
The legislative norm or standard comprehends ordinances deemed "necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants." R.S. 40:48-2.
*507 It is expedient to revivify here some quotations from the comprehensive opinion of Mr. Justice Heher speaking for the Court of Errors and Appeals in N.J. Good Humor, Inc., v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1940):
"Broad as it is, the police power is not without its limitations. Its exertion must be directed to a legitimate end, i.e., the protection of a basic interest of society rather than the mere advantage of particular individuals. Home Building and Loan Association v. Blaisdell, 290 U.S. 398; 54 S.Ct. 231; 78 L.Ed. 413. And it is requisite that the means employed in its exercise have a rational relation to that end, and be altogether free from arbitrariness. The restraints and regulations imposed for the general good and welfare must needs have the virtue of reasonableness. There cannot be in the name of police regulation, an unreasonable and oppressive curtailment of personal or property rights. A measure that goes fairly beyond the public need designed to be served does not take the category of a valid police regulation.

* * * * * * * *
The power to `regulate' is ordinarily confined to such reasonable restraints upon the trade or business made the subject thereof as may be demanded by the public interest. It will not usually be construed as including the absolute prohibition of a legitimate business that may be pursued as of common right. McConvill v. Mayor, &c., of Jersey City, 39 N.J.L. 38; McQuillin on Municipal Corporations, § 372. And it is to be observed that the legislature has thereby declared that the lines of trade endeavor proscribed by the ordinance under review are in no sense contrary to public policy or inimical to the public welfare, but are to be reasonably regulated in the public interest as the circumstances may demand."
We have no doubt concerning the existence of the lawful power of the municipality "to license and regulate" the maintenance of junk yards although within its industrial zones. Annotation, 30 A.L.R. 1427; 88 A.L.R. 970; 47 Am. Jur. 556, § 6. The adoption of the ordinance of 1934 manifests the exercise of that power in that it requires the procurement of a license for such a commercial pursuit and, for example, requires the licensee to keep a book, which shall at all times be open to the inspection of the municipal officials, in which the licensee shall currently record the description of all articles purchased and the name and address of the person from whom purchased, and forbids the licensee to trade with *508 any person under the age of 18 years or conduct his business between the hours of eight o'clock in the evening and eight o'clock in the morning.
Our present inquiry is confined by the record to a consideration of the validity of that provision of the supplement to the ordinance limiting the number of licenses to four.
The plaintiff sought a license to conduct the business of collecting scrap metals. The statement in lieu of record leaves us uninformed specifically of the elements of public health, safety, or general welfare which reasonably require the numerical limitation of the number of licenses to four until the population of the borough shall exceed 25,000.
Counsel for the municipality states that the matter before us "is one wherein a municipality desires to limit a certain type of business which definitely involves the general welfare of its inhabitants"; that a junk yard, while not a nuisance per se, "nevertheless is a potential nuisance," and that the concern of the borough council in adopting the supplement to the regulatory ordinance "was the best method for controlling this potential nuisance in the best interest of the general public." The insistence is that a junk yard is a potential, i.e., possible nuisance, one existing in possibility, not in actuality.
Let us allude to some contrastive cases. In Hammond v. Paterson, 123 N.J.L. 553 (Sup. Ct. 1940), affirmed by equally divided court, 125 N.J.L. 627 (E. & A. 1941), the applicant for the license was operating a junk yard at the time the licensing ordinance was adopted, and the Supreme Court stated:
"The evidence clearly shows that the determination of the respondent board was based on substantial facts brought to its attention by the interested parties at the hearings. It shows that the application was denied on the ground that it would be detrimental to the health and a menace to property owners who reside in the immediate vicinity of the junk yard; it shows that the immediate neighborhood consists mostly of homes, occupied by the owners themselves; it shows that the prosecutor conducted his business seven days of the week, both inside the yard and outside on the streets and gutters adjoining *509 the property, and a traffic hazard was thus created; it shows that the neighborhood was thus made definitely noisy on Sundays as well as upon other days; it shows that as conducted it was a moral hazard to the families of the neighbors, necessitating calls for the police to arrest degenerates who at times slept in the partly dismantled cars; it shows that sledge hammers were used in dismantling automobiles on Sundays; that junk is stored on the property, rubbish was burned upon the premises, and that the junk yard was infested with rats."
In Chipolone v. Clifton, 137 N.J.L. 307 (Sup. Ct. 1948), affirmed 1 N.J. 93 (1948), the court remarked:
"There were other circumstances, which appear in the proofs, adverse to the granting of the application. The neighborhood had become one of houses and small businesses. Neighbors complained that the operation of such a business had resulted in an infestation of rats. There was a complaint of rubbish fires. It is said, without contradiction, that the proofs upon which the Council acted, but which are not put before us, contain testimony by the chief of the fire department that in his opinion the proposed business would constitute a fire hazard."
The former Supreme Court reviewed the denial of the governing body of the City of Clifton to issue to the applicant a license to operate a junk yard, in Pfister v. Clifton, 133 N.J.L. 148 (Sup. Ct. 1945), and explained:
"The remaining question is whether or not the refusal of the permit was justified. In Resciniti v. Belleville, 117 N.J.L. 1, it was held that the refusal of a license to operate a junk yard, under a regulatory ordinance, must be based on a regulation which must be designed to promote the public health, safety and general welfare. So we consider the determining question in this case to be whether or not the operation of a junk yard on prosecutor's property would be detrimental to the public health, safety and general welfare of the community.

* * * * * * * *
The property is zoned by the Clifton zoning ordinance for industrial purposes. The property is certainly one that is not desirable for residential purposes and it is difficult to think of many purposes for which it is adapted.
While this is not a zoning case, the principles of law applicable are the same as those in cases arising under zoning ordinances. The refusal to permit prosecutor to devote his land to a lawful purpose must be within the valid exercise of the police power and must have *510 relation to the public health, safety or general welfare. Resciniti v. Belleville, supra. Restricting the use of property beyond the proper exercise of the police power amounts to depriving the owner of his property. Vassallo v. Orange, 125 N.J.L. 419. The prosecutor is entitled to apply his land to the use for which it is best suited. Gabrielson v. Borough of Glen Ridge, 13 N.J. Mis. R. 142."
In the present case we have before us only the unelucidated determination of the governing body that permission to pursue the lawful business of the storage and sale of junk in the industrial zone of the borough shall be restricted to four licensees until the population of the borough increases 66 2/3 per cent. While we recognize that the business may be reasonably regulated in the public interest to the extent required by the general welfare, yet upon the record before us the limitation of the number of licensees to four appears to be unreasonable, arbitrary, and capricious.
Our conclusion is that section 1 of the supplemental ordinance is invalid. The judgment under review is reversed, and the record is returned to the Law Division with directions to enter a judgment requiring the defendants to issue the license to plaintiff pursuant and subject to the provisions of the ordinance adopted August 13, 1934.