46 N.J. Super. 182 (1957)
134 A.2d 452
TOWNSHIP OF HOWELL, COMPLAINANT-RESPONDENT,
v.
ANATOLY SAGORODNY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 5, 1957.
Decided August 21, 1957.
*185 Before Judges CLAPP, DAVIDSON and SULLIVAN.
Mr. Bernard H. Weiser argued the cause for complainant-respondent.
Mr. Alexander Levchuk argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendant was convicted in the Municipal Court of the Township of Howell of having violated an ordinance of the township, enacted pursuant to N.J.S.A. 40:52-1. A fine of $10 was imposed, with costs of $5. The conviction was sustained on appeal to the County Court, and defendant now appeals to us.
The ordinance provides in part:
"Section 1. No person * * * shall engage in the business of keeping a junk yard, that is, * * * a yard, covered or uncovered, * * * for the purpose of * * * buying and selling * * * or storing * * * old and second-hand * * * metals * * * paper, lumber * * * or any other old or second-hand material commonly called junk, without being licensed to do so by the Township Committee. * * *
Section 2. Such premises shall at all times be kept and maintained by the licensee in a safe and sightly manner, with due regard to the public health and safety of persons and property in the vicinity where the junk yard is located.
Section 3. Such premises shall not be located nearer than 150 feet to any street or highway and said business shall be maintained *186 only so long as the same is enclosed by a fence at least 8 feet in height and so constructed that the business shall not be visible from the exterior and so long as said fence is kept in good repair and painted white or dark green.
Section 4. Such premises shall not be located nearer than 500 feet to any dwelling house, place of residence, church, school, auditorium, place of public gathering or like place.
Section 5. Such premises shall not be located in an area that is largely residential, or in any area where the unreasonable depreciation of surrounding property would ensue.
Section 6. Applications for permits * * * shall state the location of the premises where said proposed business is said to be located, the name and address of the owner of said premises, and the name and address of the operator of said proposed business * * *. No permit shall be issued for a period of more than one year."
As stated in the complaint against the defendant, he is charged with having, on October 13, 1956, violated the ordinance, as follows:
"Section 1: In that defendant does not have a junkyard license for the location of a junkyard operation in violation of section 1 [of the ordinance].
Section 2: In that the junkyard is being operated within 150 feet of a highway or road in violation of Section 3 [of the ordinance].
Section 3: In that the junkyard is not enclosed by a fence at least 8 feet in height in violation of Section 3 [of the ordinance].
Section 4: In that the junkyard is located within 500 feet of places of residence in violation of Section 4 [of the ordinance].
Section 5: In that the junkyard is located in an area that is largely residential in violation of Section 5 [of the ordinance]."
Defendant was operating a yard in Howell, on which was located concededly second-hand lumber, and at one point of time a quantity of second-hand pipe, waste newspaper and other odds and ends. Though defendant claims that this material, other than the lumber, was not on hand on October 13, 1956, the date stated in the complaint, nevertheless his counsel seems to have agreed before the County Court that no point was to be made over a discrepancy of this sort. So far as appears, defendant submitted no proof in either of the courts below, and he includes in his appendix merely the complaint in the municipal court, the ordinance and the County Court's opinion.
*187 The first section of the complaint charges him with not having a junk yard license. He admits he did not secure the license. But he claims that he was not obliged to; that the whole ordinance (at least the licensing provisions in it) is void because of the lack of standards controlling the township committee in the granting of licenses. That adequate standards are necessary, cannot be denied. Weiner v. Borough of Stratford, County of Camden, 15 N.J. 295 (1954). Our attention must therefore be directed first to this matter of standards.
In support of his position, defendant contends that section 6 of the ordinance is the crucial section; that it contains no standards and in no way requires the applicant for a license to show compliance with sections 2 to 5 thereof; that moreover sections 2 to 5 are couched in futurative terms, and not in the present tense which, he asserts, is requisite in the case of a standard; and that indeed section 2 and part of section 3 deal with the maintenance of the premises and the business and with the construction, repair and painting of a fence. His argument is that sections 2 to 5 are conditions subsequent, operative after a license is issued and not as a guide to the township committee in connection with its issuance.
In searching for the necessary standards here, it is fundamental that we are not confined to the four corners of section 6. Schierstead v. City of Brigantine, 20 N.J. 164, 169 (1955). Looking then at other sections, it will be perceived immediately that part of section 3 and all of sections 4 and 5 deal with the location of the premises (which must be stated in the application for the license) and are entirely applicable to the issuance of the license, even though the tense is futurative. Moreover, section 2 and the remainder of section 3 serve as standards when a license is sought as to a going business, as where a renewal license is sought, or where application is made for a license as to a business which has been in operation without a license (contrast a case where the business is not established before the application is made; the ordinance of course does not *188 contemplate that the applicant must first maintain a "safe" business and then erect a fence before he applies for a license). Thus, where an application is made for a license with respect to an operating business, we presume, in the absence of any indication to the contrary, that the important provisions of the ordinance, which would subject the applicant to a fine if they were violated, will serve as standards controlling the issuance of a license. One would hardly suppose that ordinarily in such a case the governing body intended to obligate itself to issue the license, notwithstanding the applicant's violation of some important provision of the ordinance with respect to the maintenance of the premises, and immediately leave him in a position where he is subject to a fine because of the violation. Cf. Berardi v. Rutter, 42 N.J. Super. 39, 46 (App. Div. 1956), affirmed sub nom. In re Berardi, 23 N.J. 485, 491 (1957); Adams Theatre Co. v. Keenan, 12 N.J. 267, 270 (1953). Therefore, in our opinion the provisions contained in sections 2 to 5 of the ordinance were intended to serve as standards governing the licensing authority in the issuance of the license in the present case.
Are these standards valid? We think that section 2 of the ordinance  leaving aside for the moment the words "and sightly" (which we shall refer to later)  sets up a valid standard applicable here. See Hammond v. Board of Aldermen of City of Paterson, 123 N.J.L. 553, 554 (Sup. Ct. 1940), affirmed 125 N.J.L. 627 (E. & A. 1941), dealing with a junk yard in existence when the application was made for a license. Where the nature of the subject matter warrants it, as where there is some broad concern over the public health and safety, standards will be sustained, even though they are stated in general terms. Cf. Ward v. Scott, 11 N.J. 117, 124, 125 (1952).
We also think that section 4 of the ordinance sets up a valid standard affecting the location of the premises. See Town of Grundy Center v. Marion, 231 Iowa 425, 1 N.W.2d 677, 682 (Sup. Ct. 1942); cf. Schait v. Senior. 97 N.J.L. 390 (Sup. Ct. 1922); Morgan v. Board of *189 Com'rs of Borough of Collingswood, 104 N.J.L. 13 (Sup. Ct. 1927); Sun Oil Co. v. Borough of Bradley Beach, 136 N.J.L. 307, 308 (Sup. Ct. 1947), affirmed 137 N.J.L. 658 (E. & A. 1948); N.J.S.A. 39:11-5. To sustain a licensing provision, there must be a substantial relation between it and the public health, safety, morals or general welfare; otherwise the provision constitutes an unwarranted intrusion upon property rights. In any case, a presumption of validity comes to the aid of the provision, and here we have no proof whatever by way of rebuttal. Thus, we do not know whether or not the second-hand lumber consists of old wood, collected in house-wrecking operations, which has been thrown together in heaps on the premises. And in the absence of proof, we cannot say that the operation of yards containing second-hand lumber and the junk mentioned does not give rise to dust, odors, infestation of rats, noise from the sawing of the lumber, or in other ways is not detrimental to the public health or welfare.
In connection with the matter of standards, counsel for defendant, on the oral argument, urged us to pass upon various other provisions of this ordinance and a provision in a supplemental ordinance, which we have not referred to. Quite apart from the fact (as it will appear) that this is unnecessary for the decision, and therefore perhaps improper, we have, as we have said, no proofs here, and so have no means at all of knowing to what extent we are entering upon an academic exercise. We shall therefore assume, without deciding the matter, that sections 3 and 5 of the ordinance are invalid. As for section 5, the terms therein, such as "area," "largely," "unreasonable," may perhaps in that context be said to be too indefinite. As to the requirement of a 150-foot set back found in section 3, see Delawanna Iron & Metal Co. v. Albrecht, 9 N.J. 424 (1952); cf. Prinz v. Borough of Paramus, 120 N.J.L. 72 (Sup. Ct. 1938), affirmed 121 N.J.L. 585 (E. & A. 1939). As to the requirement of a fence found in section 3, see Vassallo v. Board of Com'rs of City of Orange, 125 N.J.L. 419 (E. & A. 1940); cf. Delawanna Iron & Metal Co. v. *190 Albrecht, supra, 9 N.J. at page 430; Chaiet v. City of East Orange, 136 N.J.L. 375 (Sup. Ct. 1948); but see City of Shreveport v. Brock, 230 La. 651, 89 So.2d 156 (Sup. Ct. 1956); People v. Sevel, 120 Cal. App.2d Supp. 907, 261 P.2d 359 (Ct. App. 1953); Vermont Salvage Corp. v. Village of St. Johnsbury, 113 Vt. 341, 34 A.2d 188, 193 (Sup. Ct. 1943). We need not decide the question whether the provision with respect to a fence can be sustained because of the effect it would have upon the attractiveness of the premises and the neighborhood, and because it would therefore serve to prevent depreciation in the value of neighboring properties. Pierro v. Baxendale, 20 N.J. 17, 28, 29 (1955); Lionshead Lake, Inc., v. Township of Wayne, 10 N.J. 165, 176, 177 (1952) (concurring opinion of Jacobs, J.); Brookdale Homes, Inc., v. Johnson, 126 N.J.L. 516, 521 (E. & A. 1941) (dissenting opinion of Justice Heher).
Further, we shall assume, without deciding the point, that the requirement of sightliness, referred to in section 2 of the ordinance, which also involves the matter of aesthetics, is too indefinite  that is, that it does not set up a standard sufficiently measurable from an objective standpoint. The term is especially vague when considered in conjunction with the requirement of section 3 of the ordinance that the premises be surrounded by an 8-foot fence rendering the business invisible from the exterior. And the requirement that the fence be painted white or dark green, we shall assume is arbitrary.
Nevertheless, we have, as above stated, sustained section 4 of the ordinance and a portion of section 2 (other than the words "and sightly"). Since these provisions are independent of the provisions assumed to be invalid and can stand alone, we think it may fairly be said that the governing body intended not to have them rendered inoperative by reason of any invalidity of the other provisions. Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 361 (1953). This conclusion is substantially assisted by section 8 of the ordinance, which expressly declares that if any provision *191 thereof is found unconstitutional or illegal, the validity of the remainder shall not be affected in any way. Carter v. Carter Coal Co., 298 U.S. 238, 312, 56 S.Ct. 855, 80 L.Ed. 1160, 1189 (1936).
The attack made upon the ordinance because of a lack of standards is therefore not sustained. Defendant advances two other points striking at the entire ordinance so far as it affects him. First, he claims that the classification of second-hand lumber with junk is unreasonable. But this should not, it seems to us, render the ordinance invalid per se in this respect, even though the term "junk" may not, in ordinary usage, comprehend second-hand lumber. Grace Iron & Steel Corp. v. Ackerman, 123 N.J.L. 54, 57 (Sup. Ct. 1939). As we have indicated, we have no proof before us as to the nature of a second-hand lumber business; and in the absence of such proof, we cannot say that the provisions of the ordinance that we have sustained are unreasonable with respect to such a business. It should be observed that N.J.S.A. 40:52-1 authorizes the governing body to license and regulate junk dealers (subdivision c) and also lumber yards (subdivision g), as well as the places and premises in or at which the businesses are conducted (subdivisions c and g).
Defendant next contends that the ordinance is invalid because the regulations provided therein with respect to the premises can be effected only through a zoning ordinance; and that a zoning ordinance cannot be adopted except upon due observance of special procedural requirements found in N.J.S.A. 40:55-33 and 40:55-34. It will have been noticed that N.J.S.A. 40:52-1 expressly authorizes the regulation of the premises, and further that we have had to pass only upon the regulations contained in sections 2 and 4 of the ordinance here. Certainly, insofar as they are concerned, we see no good reason why the Legislature should be prohibited from authorizing such provisions through an ordinance passed under N.J.S.A. 40:52-1 without adopting a zoning ordinance; and, more to the point, perhaps, we see no good reason for saying that the *192 Legislature intended such provisions to be enacted only in a zoning ordinance. Regulations issued under N.J.S.A. 40:52-1, as well as zoning ordinances, of course all rest upon the police power. Pfister v. Municipal Council of City of Clifton, 133 N.J.L. 148, 152 (Sup. Ct. 1945); N.J. Const., Art. IV, Sec. VI, par. 2.
It will appear from the foregoing discussion that we have, in disposing of the matter of standards, at the same time sustained sections 1 and 4 of the complaint against the defendant and have assumed that sections 2, 3 and 5 cannot be sustained. However, even though those sections are not sustained, nevertheless the conviction must be affirmed. For the parties assure us that there has been a general conviction below as to all five sections; and such a conviction will be upheld if there is a single good section in the complaint. Cf. State v. Huggins, 84 N.J.L. 254 (E. & A. 1913); State v. Roleson, 14 N.J. 403, 409 (1954).
We come next to one very trivial matter with respect to the fine. If the five sections of the complaint be deemed to relate respectively to five separate offenses, then since (as assumed) three of the sections cannot be sustained, the general fine imposed as to the five sections likewise cannot be sustained. State v. Kaufman, 18 N.J. 75, 83 (1955). However, in this case the fine is so nominal in amount that we shall, pursuant to R.R. 1:5-1(c), exercise our original jurisdiction and, in lieu of the fine fixed below, impose a fine of $5 each on the two sections of the complaint, sections 1 and 4, which we have sustained. The fine therefore totals the amount imposed below.
Affirmed.