89 N.J. Super. 313 (1965)
214 A.2d 870
THE TOWNSHIP OF ANDOVER, PLAINTIFF-RESPONDENT,
v.
ISAAC J. LAKE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1965.
Supplementary Briefs Received October 4, 1965.
Decided November 15, 1965.
*315 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Barry N. Chase argued the cause for appellant (Messrs. Gersten & Chase, attorneys).
Mr. Sanford Lloyd Hollander argued the cause for respondent (Messrs. Trapasso, Dolan & Hollander, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a judgment of the County Court which, on a trial de novo, affirmed his conviction in the municipal court of violating certain provisions of the township zoning ordinance.
Specifically, the complaint filed in the municipal court charged that on October 21, 1963 defendant "did violate and there commit the following offense in violation of the Township Ordinance, Art. VI, Par. 10d, Zoning Ordinance, by maintenance of junk yard prohibited by the ordinance."
The zoning ordinance of the township was adopted on June 15, 1962. Admittedly, defendant was operating a junk yard on the date charged in the complaint. However, his defense was that such operation commenced in 1949 and has continued without interruption ever since, and thus it was a nonconforming use which could not be interdicted by the zoning ordinance.
Upon the trial de novo the township rested its case entirely upon the testimony of H. Grant Leonard, its mayor, and Walter Guenzel, its building inspector who was charged with the enforcement of the zoning ordinance. Leonard testified that he had no knowledge of the state of the land prior to *316 June 1963. Guenzel said that he had never seen junk on the Lake property prior to June or July 1963. This proof coupled with the fact that junk was on the property on the date charged in the complaint was sufficient to make out a prima facie case of violation requiring defendant to go forward with proof of a nonconforming use.
Defendant testified that he had continuously maintained the property as a junk yard from February 1949, when he acquired it by deed, until the date of the complaint. Partially corroborative testimony was given by defendant's nephew, Paul Lake, who stated that from 1949 until his departure from the area in 1960 he observed the property was used as a junk yard. Leonard Renkel testified that there was junk on the property prior to 1949 and that to his knowledge the land was used by defendant as a junk yard up to some time in 1962. Testifying to similar effect were Richard Little, who observed the property intermittently from 1955 to 1961, and Howard Beatty who dealt with the defendant in the sale of junk in the years 1955 to 1957 and had viewed the land occasionally thereafter. The township offered no evidence in rebuttal of these proofs and they therefore stood uncontradicted at the close of the entire case.
The simple, yet crucial, issue before the court was whether defendant was lawfully operating a junk yard on the property when the zoning ordinance was adopted. As we have noted, defendant testified without contradiction that his junk yard operation was in existence at that time. The judge made no finding to the contrary on the grounds of credibility, or otherwise. He merely said: "The defendant claims that he used the property as a junk yard since he purchased it. However, whether that is so or not the court is not too sure." In our judgment that determination, on the state of the proofs as herein set out, required an acquittal.
In finding the defendant guilty the court concluded that the defendant's use was not "a lawful use at the time that the zoning ordinance was passed," because the operation of the junk yard was in violation of two other ordinances.
*317 Both are regulatory ordinances adopted under the police powers of the municipality. Neither is a zoning ordinance. On May 27, 1952 the township adopted an ordinance to license and regulate junk dealers. Concededly defendant did not obtain a license as required by that ordinance, and may have been subject to the penalty therein provided. However, this court has ruled that the failure to obtain a license for the operation of a business, as provided in an ordinance regulating the conduct of such business does not adversely affect the status of the operator as a nonconforming user. In Scavone v. Mayor, etc. Totowa, 49 N.J. Super. 423 (App. Div. 1958), a used car dealer licensed under an ordinance regulating the used car business failed to apply for a renewal upon the expiration date. He continued to sell used cars at the premises until his new application for a license was refused by the authorities on the basis of a new prohibitory zoning amendment, adopted the same day. The court noted that the zoning statute was not enacted by the Legislature as a sanction for enforcement of municipal ordinances regulating activities in the exercise of the police and revenue raising power, and held:
"While it is recognized that the spirit of the zoning statute and the interpretative cases is restrictive of nonconforming uses, nevertheless the owner of property is entitled to stand on the statute without being made to suffer erosion of his rights as a nonconforming user under the excuse of serving the public policy represented by regulatory enactments of quite different significance for the enforcement of which appropriate sanctions are available." Id., at pp. 427-428.
This is in accordance with the general rule that:
"[W]here the invalidity of the use prior to the effective date of the zoning restriction lies in failure to secure a license required by an ordinance adopted pursuant to the general police power, other than a zoning ordinance or an ordinance regulating use of land as distinguished from regulation of an activity upon land in general, it is generally held that such invalidity does not preclude acquisition of a nonconforming use protected as against the operation of the subsequent zoning restriction." 2 Rathkopf, The Law of Zoning and Planning (3d ed. 1957), p. 58-17.
*318 On June 27, 1955 the township passed an ordinance totally prohibiting the keeping of junk yards in the township, and repealing the licensing ordinance of 1952. This was not a zoning restriction, but rather a prohibition of undesired activity. Indeed, as far as appears, the township had no zoning ordinance at that time. Since a nonconforming use must be a lawful use, 2 Rathkopf, The Law of Zoning and Planning (3d ed. 1957), p. 58-15, we must determine whether defendant's use was rendered unlawful by this regulatory ordinance so that it could not achieve the status of a nonconforming use under the 1962 zoning ordinance.
In Scavone, supra, in obiter dictum this court approved the proposition first espoused by Judge Bigelow in his dissent in State v. Casper, 5 N.J. Super. 150, 155 (App. Div. 1950), that a prior nonconforming use is not unlawful unless it is in violation of a prior zoning ordinance. 49 N.J. Super., at p. 427. We now think that this proposition is too limited as applied to this case. If the Scavone dictum were followed defendant's uncontradicted use, undeniably in violation of the 1955 regulatory ordinance, would gain the status of a "nonconforming use" for zoning purposes (since it was excluded from the 1962 zoning plan), merely because it was not in violation of a prior zoning ordinance. Such a result would contradict the general rule that a use must be lawful to become a "nonconforming use," and would also run counter to the zoning policy which restricts nonconforming uses. Therefore, we do not follow the dictum in Scavone.
The correctness of the trial court's conclusion (that the defendant's junk yard was an unlawful use) depends upon the validity of the 1955 ordinance tested in light of the proper exercise of general police power of the municipality. See N.J.S.A. 40:48-2.
Initially, it cannot be questioned that a state in the exercise of its police power, or a municipality exercising the police power delegated to it by a state, can license or regulate the business of dealing in junk. Annotation, "Regulation of junk dealers," 30 A.L.R. 1427 (1924), supplemented 45 *319 A.L.R.2d 1391 (1956). Accordingly, N.J.S.A. 40:52-1(c) enables a municipal body to license and regulate junk yards. See Howell Twp. v. Sagorodny, 46 N.J. Super. 182 (App. Div. 1957), affirmed o.b. 25 N.J. 502 (1958); Messina v. Mayor and Council etc. of Lodi, 18 N.J. Super. 503 (App. Div. 1952); Hammond v. Board of Aldermen etc., Paterson, 123 N.J.L. 553 (Sup. Ct. 1940). Similarly, N.J.S.A. 39:11-1 et seq. requires a motor vehicle junk permit to be obtained from a municipality before a state license is issued. See Pfister v. Municipal Council etc., Clifton, 133 N.J.L. 148 (Sup. Ct. 1945).
Nevertheless, because the operation of a junk yard or an automobile wrecking yard has been held to be a legitimate and useful business, it cannot legislatively be declared to be a nuisance per se, although it may be found to be a nuisance in fact. See, e.g., Bachman v. State, 235 Ark. 339, 359 S.W.2d 815, 817 (Sup. Ct. 1962); Commonwealth v. Hanzlik, 400 Pa. 134, 161 A.2d 340 (Sup. Ct. 1960); Township of Garfield v. Young, 348 Mich. 337, 82 N.W.2d 876, 877 (Sup. Ct. 1948). See also 7 McQuillan, Municipal Corporations (3d ed. 1949), § 24.352, p. 261. As a nuisance, it can of course be abated by governmental action. See generally Prosser, The Law of Torts (3d ed. 1964), pp. 605-611.
The general rule is that an absolute prohibition of a lawful business is an unconstitutional deprivation of property without just compensation or due process of law in the absence of regulation which is rationally related to public health, safety and welfare. See, e.g., N.J. Good Humor, Inc. v. Board of Com'rs etc., Bradley Beach, 124 N.J.L. 162, 170-171 (E. & A. 1940) (peddling). This rule has been applied to junk yards. 47 Am. Jur. "Secondhand Dealers," § 6, pp. 556-557. While there is no New Jersey decision directly in point, cf. Vassallo v. Board of Com'rs etc., Orange, 125 N.J.L. 419, 421-422 (E. & A. 1940) (licensing ordinance); Pfister v. Municipal Court etc., Clifton, supra, 133 N.J.L., at p. 152 (licensing ordinance), other jurisdictions have invalidated ordinances prohibiting junk yards on the ground *320 that they exceeded the police power. Vermont Salvage Corp. v. Village of St. Johnsbury, 113 Vt. 341, 34 A.2d 188 (Sup. Ct. 1943); City of St. Louis v. Evraiff, 301 Mo. 231, 256 S.W. 489 (Sup. Ct. 1923); Commonwealth v. Malatsky, 203 Mass. 241, 89 N.E. 245, 24 L.R.A., N.S., 1168 (Sup. Jud. Ct. 1909); People ex rel. Goldberg v. Busse, 240 Ill. 338, 88 N.E. 831 (Sup. Ct. 1909); Anders v. Town of Danvill, 45 Ill. App.2d 104, 195 N.E.2d 412 (App. Ct. 1964); Village of Deshler v. Hoops, Ohio Com. Pl., 196 N.E.2d 476 (C.P. 1963); Commonwealth v. Christopher, 184 Pa. Super. 205, 132 A.2d 714 (Super. Ct. 1957). Ordinances have also been invalidated where based solely on esthetic considerations. Bachman v. State, supra; Vermont Salvage Corp. v. Village of St. Johnsbury, supra; City of Defiance v. Killion, 116 Ohio App. 60, 186 N.E.2d 634 (Ct. App. 1962).
In the case sub judice the 1955 ordinance treats a lawful business as a nuisance per se. Since there is no regulation involved, we are satisfied that the total prohibition exceeded the police powers. Therefore, defendant's use of his land as a junk yard was not rendered illegal by that ordinance.
In the context of our disposition of this case we do not pass on the validity of the 1962 zoning ordinance. It was not challenged in the trial court or on appeal. Nevertheless, we believe it is necessary to point out that the total prohibition of junk yards under the zoning ordinance is not subject to the same attack as is directed at the regulatory ordinance. Zoning is based upon an enabling act which sets forth specific purposes and classifies homogeneous and compatible uses into separate districts under a comprehensive plan. This makes it possible to exclude from a community specific uses which could not be so excluded under the police powers of the municipality. See 1 Rathkopf, supra, p. 15-5. Indeed, a total prohibition of junk yards from a particular zone by means of a zoning ordinance has been upheld where the proof showed that the character of the zone was not such as to render such a prohibition arbitrary, capricious or unreasonable under the standards of zoning set out in the enabling act, viz., R.S. *321 40:55-32. State v. Yaccarino, 3 N.J. 291 (1949). Moreover, our Supreme Court has upheld an amendatory ordinance which excluded the erection of further apartment houses in a municipality as a whole, although an apartment house is without doubt a lawful business. Fanale v. Borough of Hasbrouck Heights, 26 N.J. 320 (1958). See also Vickers v. Tp. Com. of Gloucester Tp., 37 N.J. 232 (1962), cert. denied 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963).
For the reasons stated we conclude that the trial court's determination that defendant's alleged violation of the 1952 and 1955 ordinances vitiated his status as a nonconforming user under the zoning ordinance was error. The evidence of prior nonconforming use having been uncontradicted, the judgment is reversed.