275 N.J. Super. 82 (1994)
645 A.2d 788
FRANCIS UNCLE AND FRED VAHLSING, III, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY PINELANDS COMMISSION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 24, 1994.
Decided July 19, 1994.
*84 Before Judges BRODY, STERN and KEEFE.
Malsbury, Armenante & Podraza, attorneys for appellants (Sharon M. Podraza, on the brief; Frank P. Armenante, on the reply brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Mary C. Jacobson, Asst. Attorney General, of counsel; Rachel Horowitz, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
This appeal challenges a Pinelands Commission (Commission) regulation, adopted pursuant to the Pinelands Protection Act (Act), N.J.S.A. 13:18A-1 to -29, that prevents plaintiff Frances Uncle (plaintiff) from using her property for the extraction of sand and gravel. The regulation has that effect because she had failed to register the use as nonconforming by January 21, 1981, and therefore under the regulation it could not be continued as a preexisting nonconforming use. Plaintiff has contracted to sell the property to plaintiff Fred Vahlsing, III, subject to the condition that it may be used for extracting sand and gravel. The matter was transferred to this court by the Chancery Division after a factual record was developed, through stipulations and findings, so that we may perform our function of reviewing the validity of the regulation. We sustain the regulation.
The property, located in Pemberton Township, is 110 acres of undeveloped land in the Preservation Area of the Pinelands, an area of the Pinelands singled out in the Act for preservation in its natural state. N.J.S.A. 13:18A-9c. Plaintiff inherited the property in 1978 from her mother. Her father had owned it since 1944. It passed to her mother when he died. Until December 1979, the *85 family used the property for extracting sand and gravel. Operation of the business was passive. Customers extracted for themselves what they wanted by whatever manner they chose. In time the operation came under increasing governmental regulation and control, which plaintiff and her family ignored, leading to its closure in 1979.
In order to make up for the lost income, plaintiff applied for and received a forestry permit from the Commission, which enabled her to obtain a lower farmland assessment from Pemberton in 1984. The permit described the property as having "an abandoned gravel pit," the remainder being wooded with pine oak. In 1987, plaintiff entered into the contract of sale to Vahlsing who wants to resume using the property for sand and gravel extraction.
A 1973 amendment to Pemberton's zoning ordinance changed the property's permitted uses from industrial to residential. In 1975 Pemberton extended its ordinance regulating strip mining to include sand and gravel operations. Four years later Pemberton closed down the operation for noncompliance with its strip-mining ordinance.
In 1988, after plaintiff had entered into the contract of sale, she obtained a resolution from the Pemberton Zoning Board of Adjustment declaring that for zoning purposes the extraction operation was a protected pre-existing nonconforming use. The resolution made clear, however, that it gave no protection against having to comply with governmental regulations concerning the operation:
NOW THEREFORE, BE IT RESOLVED by the Zoning Board of Adjustment of the Township of Pemberton that applicant be granted an interpretation that the dirt/gravel mining operation is a pre-existing use which may continue subject to all applicable Municipal and State licensing procedures. The interpretation set forth in this Resolution shall not be deemed to grant or waive any permits required to be obtained or site plan approval procedures necessary in connection with the mining operation.
The trial judge found as uncontroverted facts that plaintiff and her parents not only had failed to comply with the strip-mining *86 ordinance but also failed to comply with statutes and State regulations governing the extraction operation:
(1) Plaintiff Uncle never registered as required the operation with the Commissioner of Labor and Industry pursuant to the Mine Safety Act, N.J.S.A. 34:6-98.1 et seq., specifically N.J.S.A. 34:6-98.4(h).
(2) Plaintiff Uncle never reported as required the operations to the Commissioner pursuant to N.J.S.A. 34:6-98.6(c).
(3) Plaintiff Uncle never obtained approval as required for the mining operation pursuant to the Soil Erosion and Sediment Control Act, N.J.S.A. 4:24-39 et seq.

(4) Plaintiff Uncle never registered as required the mining operation with defendant pursuant to the CMP [Comprehensive Management Plan] requirements.[[1]]
The regulation plaintiff challenges, N.J.A.C. 7:50-6.63, is part of the most recent revision of the Comprehensive Management Plan for the Pinelands that the Act required the Commission to adopt and periodically revise. N.J.S.A. 13:18A-8. Its current form was adopted November 2, 1987 and reads:
(a) Except as expressly authorized in this Plan, the extraction or mining of mineral resources other than sand, gravel, clay and ilmenite is prohibited.
(b) No resource extraction operations shall be permitted in the Preservation Area District or Special Agricultural Production Areas other than those operations which were registered with the Pinelands Commission on or before January 21, 1981[[2]] and received all necessary development permits for resource extraction on or before December 31, 1985. In such cases, the area of extraction is limited to the value given under the category "acreage to be mined" on the mine registration application submitted to the Department of Labor and Industry as of February 7, 1979, or that area approved by a valid municipal permit as of February 7, 1979 in *87 the case of an operation exempted from registration with the Department of Labor and Industry.
As the parties stipulated, registration with the Commission had two purposes. A registrant had to submit a copy of its permit from the Department of Labor and Industry or, if it was exempt from the provisions of the Mine Safety Act, from the municipality. This provided assurance that the grandfather clause would not perpetuate an unlicensed extraction operation. Registration served another purpose. As the parties also stipulated:
The requirement for registration with the Pinelands Commission was to enable the Commission to determine the number of resource extraction sites that could potentially be approved in the Preservation Area so the Commission could determine if any changes in its regulatory or acquisition programs were appropriate prior to approving all the sites which had registered.
* * * * * * * *
Following its receipt of resource extraction registrations the Commission decided that the number of operations existing on February 8, 1979 was roughly as the Commission had estimated and, therefore, that no changes in regulatory or acquisitional programs were appropriate.
Plaintiff argues that use of the property for extracting sand and gravel is constitutionally protected because it predated not only the zoning ordinance amendment, but also the municipal strip-mining regulations, the Mine Safety Act and the Pinelands Protection Act. The argument is not that the regulation effects an unconstitutional taking; plaintiff does not claim that her property is useless unless it can be used for the commercial extraction of sand and gravel. Rather, she claims that the regulation denies her substantive due process.
A person challenging a land use regulation as a violation of due process must overcome its presumed validity. "[T]he guaranty of due process requires `only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained.'" Schmidt v. Board of Adjustment, 9 N.J. 405, 414, 88 A.2d 607 (1952) (quoting Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934)). The Legislature has enumerated *88 the objects sought to be attained by regulating the use of land within the Preservation Area of the Pinelands:
c. The goals of the comprehensive management plan with respect to the preservation area shall be to:
(1) Preserve an extensive and contiguous area of land in its natural state, thereby insuring the continuation of a pinelands environment which contains the unique and significant ecological and other resources representative of the pinelands area;
(2) Promote compatible agricultural, horticultural and recreational uses, including hunting, fishing and trapping, within the framework of maintaining a pinelands environment;
(3) Prohibit any construction or development which is incompatible with the preservation of this unique area;
(4) Provide a sufficient amount of undeveloped land to accommodate specific wilderness management practices, such as selective burning, which are necessary to maintain the special ecology of the preservation area; and
(5) Protect and preserve the quantity and quality of existing surface and ground waters. [N.J.S.A. 13:18A-9c.]
Our Supreme Court has noted that the Legislature's objective in creating the Preservation Area in the Pinelands was "to protect especially sensitive land in its natural state and to promote compatible agricultural, horticultural, and recreational uses." Gardner v. New Jersey Pinelands Com'n, 125 N.J. 193, 201, 593 A.2d 251 (1991).
Banning commercial sand and gravel extraction in the Preservation Area obviously contributes to the salutary objective of preserving the natural state of that "especially sensitive" portion of the Pinelands. In considering whether such a ban is unreasonable, arbitrary, or capricious, we are mindful that the ban does not apply outside the Preservation Area of the Pinelands. Part of the Comprehensive Management Plan, N.J.A.C. 7:50-6.61, provides:
Sand, gravel, clay, and ilmenite are important Pinelands resources that have been commercially utilized in the past. Such activity can provide a substantial economic benefit to landowners; however, it is critical that such activities do not conflict with other values of the Pinelands. This Part is intended to ensure that extraction activities do not adversely affect long-term ecological values in the Pinelands, and that abandoned extraction sites will be restored so that they will be a functional part of the Pinelands ecosystem.
Even in the Preservation Area, the ban does not apply to all sand and gravel extraction operations. The regulation being challenged *89 permits existing operations to continue if their presence is made known through timely registration showing the scope of the operation and proof that it conforms with State and local regulations.
The continuation of a nonconforming use may be conditioned on the timely filing of pertinent information without denying the owner due process. Board of Adjustment of City of San Antonio v. Nelson, 577 S.W.2d 783 (Texas Civ.App.), writ refused by 584 S.W.2d 701 (Texas 1979). There, a provision of the San Antonio City Code required timely registration of nonconforming uses:
The owner or owners of the land and/or structure or structures in which nonconforming use is located shall register such nonconforming use by filing with the department of building and planning administration a registration statement for such nonconforming use within three (3) years from the effective date hereof. Nonconforming uses and structures in newly annexed territory shall be registered within one (1) year of their annexation.
[Id. at 785].
As here, a reason for requiring registration was to inform public planners to enable them to plan intelligently. The court sustained the constitutionality of the ordinance:
The purpose of this registration ordinance is to provide San Antonio with sufficient knowledge of the nature and extent of nonconforming uses claimed within the City so that the City can consider these nonconforming uses in planning and can monitor their abandonment. Without a registration scheme it would be impossible for San Antonio to begin to implement the plan for the fair and reasonable return of the property to the character of the surrounding neighborhood. This ordinance was enacted to promote the need, health, safety, and general welfare of the public. Since the ordinance bears a reasonable relationship to the object sought to be obtained, it is constitutional.
[Ibid.]
Applying the regulation to the facts in the present case further diminishes plaintiff's claim that it denies her substantive due process. Even if she had not abandoned the sand and gravel operation in a legal sense, her commitment to it was so slight that rather than comply with regulations that governed that use, she gave it up in favor of using the property for forestry. Her commitment to the nonconforming use may have been so slight because her investment in the operation was so little. Giving up *90 that use did not require dismantling a going concern, which might have supported a stronger claim of unfairness.
Plaintiff also argues that the regulation exceeds the Commission's statutory authority by purporting to extinguish a nonconforming use because it violates licensing requirements. The Municipal Land Use Law (MLUL), many of whose objectives coincide with those of the Pinelands Protection Act, permits a use to continue after it is rendered nonconforming by a zoning amendment. N.J.S.A. 40:55D-68. The statutory protection must be given even if the owner had failed to secure a license required for the use. Andover Tp. v. Lake, 89 N.J. Super. 313, 317, 214 A.2d 870 (App.Div. 1965).
The Legislature has made it clear, however, that the Pinelands Protection Act and the regulations adopted under it supersede the MLUL when they conflict:
It is the intent of the Legislature that, except as otherwise specifically provided in this act, in the event of any conflict or inconsistency in the provisions of this act and any other acts pertaining to matters herein established or provided for or in any rules and regulations adopted under this act or said other acts, to the extent of such conflict or inconsistency, the provisions of this act and the rules and regulations adopted hereunder shall be enforced and the provisions of such other acts and rules and regulations adopted thereunder shall be of no force and effect.
[N.J.S.A. 13:18A-27.]
Thus the MLUL does not prevent the Commission from requiring that the registration include proof that plaintiff had obtained State and local permits for the extraction operation.
We are satisfied from a careful review of this record that the other issues raised are clearly without merit and require no discussion. R. 2:11-3(e)(1)(E).
We sustain the validity of N.J.A.C. 7:50-6.63.
NOTES
[1] The reference is to the regulation challenged in this appeal.
[2] The regulation was first adopted September 23, 1980, as part of the original Comprehensive Management Plan. Section 6-602 of the Plan then protected resource extraction uses in operation on August 8, 1980, as pre-existing nonconforming uses. The following provision of that Section conditioned the protection on registration:

No resource extraction operation shall be considered to have been in operation as of August 8, 1980, unless the owner or operator of such use registers the use with the Pinelands Commission within 120 days of the adoption of this Plan. Such registration shall describe the area and extent of the operation's existing permit, the area for which mining has been completed as of August 8, 1980, and shall include a copy of all outstanding permits.