**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4124-19

DON ROGERS, INC. and
K & E HOLDING, I, LLC,

      Plaintiffs-Respondents,

v.

TOWNSHIP OF FAIRFIELD
PLANNING/ZONING BOARD,

      Defendant,

and

SOUTH STATE, INC.,

      Defendant/Intervenor-
      Appellant.

Argued October 19, 2021 – Decided December 7, 2021

Before Judges Fisher, Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0440-19.

Colin G. Bell argued the cause for appellant (Hankin Sandman Palladino Weintrob & Bell, attorneys; Colin G. Bell, on the briefs).

Robert S. Baranowski, Jr. argued the cause for respondents (Hyland Levin Shapiro LLP, attorneys; Robert S. Baranowski, Jr. and Megan Knowlton Balne, on the brief).

PER CURIAM

Plaintiff[1] has operated a sand mining operation in the Township of Fairfield since 1968. South State, Inc. (SSI) operates a competing business on a lot adjoining plaintiff's property.

In April 1987, the Township issued plaintiff a permit to mine a portion of its property, denoted on the tax map as lot thirteen and a portion of lot fifteen (old lot fifteen). Shortly thereafter, the Township altered its tax map, prompting plaintiff to file a new deed that altered lot fifteen's property line (new lot fifteen).

Then, in 1990, the Township enacted a zoning ordinance entitled "The 1990 Amended Fairfield Township Resource Extraction Ordinance" (1990 Ordinance), which prohibited all mining operations except for "[a]ny lawful existing resource extraction operation[s] . . . ." This term was defined as:

> [A] lot or lots which was, at the time of the adoption of the original Fairfield Township Mining Ordinance a

---

[1] As the two entities are sister companies with the same principals, we refer to them collectively as "plaintiff."

> valid pre-existing use . . . and all other mines in Fairfield Township which validly pre-existed the adoption of the original Township Mining Ordinance in June of 1969. Existing operation shall include the entire tract of land on which the operator is validly operating.

The 1990 Ordinance established a comprehensive regulatory scheme for all existing mines, requiring them to—among other things—acquire and renew a permit to mine every two years and comply with certain performance guarantees.

After the Township denied plaintiff's renewal application in 1995, plaintiff filed suit seeking a determination that its mining operations on lots thirteen and fifteen were valid pre-existing uses as defined under the 1990 Ordinance and an order for the issuance of a permit.

In a 2002 order, the court agreed with the Fairfield Township Joint Planning and Zoning Board (Board) that new lot fifteen was never licensed for mining and therefore could not be afforded the status of a pre-existing nonconforming use. However, lot thirteen and old lot fifteen were entitled to pre-existing nonconforming use status because they "w[ere] used for mining as of June 30, 1969, the effective date of the original mining ordinance."

Although the Law Division's opinion instructed the Township's counsel to submit "an appropriate order" denying the renewal of DRI's mining permit as to

3

new lot fifteen, no order was submitted. Instead, the litigation was resolved under a consent order entered in November 2006.

In the consent order, the Township agreed to issue a five-year mining permit deemed to satisfy "any and all . . . ordinances and regulations" and allowed plaintiff to resume mining operations on lot thirteen and all of lot fifteen. Plaintiff agreed to build a six-foot-tall fence around certain portions of its property and to pay the $6500 fee. Moreover, upon the expiration of its permit, plaintiff did not have to submit further site plan maps, but instead could "simply submit a map showing the area proposed to be mined."

Neither party complied with its obligations. The Township did not issue plaintiff a mining permit. Plaintiff did not construct the fence or pay the fee.

Nevertheless, plaintiff continued mining operations until it was cited by the Township's code enforcement officer in November 2013 for failing to have the proper permit. After plaintiff's counsel produced a copy of the consent order, the officer withdrew the citation. But no permit was issued. In that same month, the Township ordered and received sand, gravel, and topsoil from plaintiff.

In 2015, the Township enacted another new zoning ordinance regulating mining activities, entitled the "Land Mining, Earth and Resource Extraction Operations Ordinance." (2015 Ordinance). The ordinance stated that "all

A-4124-19

resource extraction operations are now prohibited throughout the Township . . . except for Existing Resource Extraction Operations which may be continued subject to the requirements of this ordinance."  An existing Resource Extraction Operation was defined in section 13-8-2 as:

> A lot or lots which are, at the time of adoption of this Article, being extracted as part of the regular business of the permittee, and shall include the entire tract of land on which the permittee has conducted, without abandoning, Resource Extraction Operations prior to 2006. Adjacent and/or contiguous Lots not part of the lands on which Resource Extraction Operations were conducted.

The 2015 Ordinance also required entities renewing their permit to submit an application to the Board with—among other items—a statement of the equipment to be used, a reclamation plan, and an environmental impact statement.  However, the ordinance empowered the Board to "waive any section . . . in whole or in part with the exception of" the environmental impact statement upon "good cause shown . . . ."

Thereafter, in September 2018, the Township issued plaintiff a notice of violation for operating its business without a permit.  Plaintiff's counsel responded in a letter to the Township, stating that while it "is clear from the [c]onsent [o]rder that [plaintiff] is entitled to a five-year permit/license," the

5

Township "never issued" the license. Counsel requested the Township "kindly arrange for the issuance of the permit . . . ."

The Township reacted by filing a verified complaint in the Chancery Division, alleging plaintiff had violated the consent order and requesting the court enjoin plaintiff from any further mining operations. Plaintiff counterclaimed and moved for a judgment declaring it had the right to continue its mining operation in accordance with the consent order.

The court denied both applications, finding no irreparable harm, and directed plaintiff to submit a mining permit application to the Board in accordance with the 2015 Ordinance.

Plaintiff complied with the court's instruction and submitted a permit application with the Board for lots thirteen and fifteen in February 2019. Following two days of hearings, during which SSI opposed the application, the Board declared plaintiff's application complete. However, the Board requested plaintiff supply it with additional information and rescheduled a vote on the application until a future meeting.

Because SSI asserted plaintiff needed to obtain a use variance for lot fifteen, when the second hearing began, plaintiff advised the Board they had published and served notice of their request for a use variance, in the event the

6

Board deemed it necessary. In response to an additional allegation by SSI that plaintiff had abandoned its mining operations, plaintiff produced a summary of the mining activity conducted on its property for the prior five years. It also produced mine registration applications to and certificates received from the New Jersey Department of Labor.

Plaintiff's witnesses explained to the Board how they had revised its plans to address the Board's concerns expressed during the first hearing and how it satisfied the criteria for a use variance. Plaintiff also indicated it would construct the fence and pay the $6500 fee as a condition of approval.

SSI again opposed the application. The Board voted to deny the application. The subsequent resolution did not include any reasons for the denial.

Plaintiff filed a complaint in lieu of prerogative writs appealing the Board's decision. SSI moved to intervene and to assert a counterclaim for a declaratory judgment that the consent order was illegal, ultra vires, and void ab initio because it constituted contract zoning. The trial court granted SSI's motion.

Thereafter, the parties consented to a limited remand to allow the Board to adopt a resolution setting forth its findings and conclusions. In an amended

7

resolution, the Board again denied plaintiff's application. The resolution stated the application "was denied because [plaintiff] needed a use variance even though the argument is clearly a pre-existing use," and plaintiff "did not apply for a D-Variance." In addition, the Board cited nine reasons for its denial, including that plaintiff had failed to construct a fence and pay the $6500 fee required under the consent order which showed "a lack of moral character."

After a bench trial, the trial judge issued an oral decision and a corresponding order of judgment on June 2, 2020. In the order, the judge granted plaintiff the sought relief, reversing the Board's denial of the permit and finding: (1) the 2006 consent order was "valid and binding"; and (2) plaintiff's mining operations constituted "a pre-existing, non-conforming use that meets the definition of 'existing resource extraction operation'" under the Township's code. Therefore, the judge directed the Board to review plaintiff's application under the 2015 ordinance. In conducting its review, the judge advised the Board it could require certain conditions as a prerequisite to issuing the permit.

After SSI appealed the decision, it learned that the transcript of the oral decision had been lost.[2] This court ordered a limited remand under Rule 2:5-3(f) to permit the judge to issue a statement of reasons supporting the order of

---

[2] The Board did not appeal from the trial court's order.

judgment. In the interim, the Board recommended the Township issue a permit to plaintiff, which it did in August 2020.

On November 3, 2020, the judge issued a comprehensive written statement of reasons, concluding the Board's decision to deny the permit was "arbitrary, capricious and unreasonable." The judge found plaintiff demonstrated its mining operation constituted a pre-existing nonconforming use because it "was a lawful use at the time the zoning ordinance was changed, and there has been continuity of use since that time." He relied on Uncle v. New Jersey Pinelands Comm'n, 275 N.J. Super. 82, 90 (App. Div. 1994) in noting that "the statutory protection of a nonconforming use 'must be given even if the owner had failed to secure a license required for the use.'"

The judge further found that the mining operation was not abandoned because "there was no intent to abandon the Property, and no overt act or failure to act that would demonstrate abandonment ha[d] occurred" given "[p]laintiff's continuous operation . . . ."

The judge also addressed whether the Board's decision to deny plaintiff's permit application for the reasons provided in the amended resolution was "arbitrary, capricious, or unreasonable." He found the Board acted arbitrarily in

denying plaintiff's application for a number of the cited reasons because the 2015 Ordinance did not require the items denoted in the resolution.

The judge further found the Board acted arbitrarily in denying plaintiff's application for failing to comply with the terms of the 2006 consent order when it neither built a fence nor paid the $6500 fee. Those conditions were not required under the 2015 Ordinance and in its application plaintiff agreed to build the fence and pay the fee. The judge stated this "eliminates this issue in the present case and does not constitute grounds for denial of the permit as a pre-existing nonconforming use", especially because neither party complied with the 2006 Consent Order. Ibid.

The court concluded:

> Ultimately, the issue in this case is not whether [plaintiff] met the requirements for a use variance, but whether [plaintiff] is in compliance with the [2015] Ordinance. Having been found to be a pre-existing nonconforming use that was never abandoned, [plaintiff] does not require a use variance. While there was noncompliance on both sides regarding the 2006 Consent Order, the salient point here is that [plaintiff] was never issued a mining permit, and thus could never renew said permit. As no permit was issued and [plaintiff] is a pre-existing nonconforming use that complies with [the 2015 Ordinance], [the] Board's denial of the application was, for the reasons stated above, arbitrary, capricious, and unreasonable.

10

On appeal, SSI asserts the court erred in: (1) relying on the consent order to make its decision as the order constitutes illegal ultra vires contract zoning; (2) finding plaintiff established a valid pre-existing nonconforming use; and (3) finding the Board's decision was arbitrary, capricious, and unreasonable.

Our review is governed by the same standard used by the trial court. See Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 433-34 (App. Div. 2009) (citations omitted). Therefore, we are limited to determining whether the Board could reasonably have reached its decision. See Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987) (citing Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 285 (1965)).

"Ordinarily, when a party challenges a . . . board's decision through an action in lieu of prerogative writs, the . . . board's decision is entitled to deference." Kane Props., LLC v. Hoboken, 214 N.J. 199, 229 (2013). We, therefore, defer to a planning board's decision and reverse only if its action was arbitrary, capricious, or unreasonable. See Zilinsky v. Zoning Bd. of Adjustment of Borough of Verona, 105 N.J. 363, 368 (1987). However, where the issue on appeal involves a purely legal question, we afford no special deference to the trial court's or the planning board's decision and must determine if the board understood and applied the law correctly. See D. Lobi Enters., Inc.

v. Planning/Zoning Bd. of Borough of Sea Bright, 408 N.J. Super. 345, 351 (App. Div. 2009).

As stated, SSI contends the trial court erred in relying on the 2006 consent order because the order "granted [plaintiff] a mining permit by contract" and exempted plaintiff from the application and approval requirements for any future renewals of the mining license as required under the 2015 ordinance. We disagree.

The consent order did not rezone plaintiff's property. Rather, it recognized that plaintiff's mining operations on lots thirteen and fifteen were entitled to pre-existing nonconforming use status—a conclusion the Law Division reached in its 2002 opinion. Furthermore, no permit was ever issued to plaintiff under the terms of the consent order.

When applying for a new permit in 2019, plaintiff did not rely on the consent order. It presented expert testimony and other evidence to demonstrate compliance with the 2015 Ordinance.

It is also clear that the trial court, in reversing the Board's decision, did not rely solely on the consent order. Instead, the court analyzed whether plaintiff qualified as an existing resource extraction operation as defined in the 2015 Ordinance. In determining plaintiff met the definition, the court

considered the presented evidence, including: the fact that plaintiff had mined continuously on its property since 1968, had obtained a mining permit in 1987 for lots thirteen and fifteen, and had produced evidence showing its output at the mine from 2013 to 2018, which included a sale of sand to the Township in 2013.

Further, the court directed the Board on remand to consider plaintiff's application under the terms of the 2015 Ordinance—not the 2006 consent order. The court instructed the Board to include various conditions for approval, including "[a]ny other conditions expressly related to compliance with" the 2015 Ordinance. Therefore, neither plaintiff nor the court relied on the consent order to circumvent the 2015 Ordinance requirements.

SSI contends the trial court erred in finding plaintiff qualified for pre-existing nonconforming use status and met the definition of existing resource extraction operation under the 2015 Ordinance. SSI reads the Law Division's 2002 opinion to state that mining was not a pre-existing nonconforming use on lot fifteen. And, SSI asserts, even if the status was correct, plaintiff later lost the qualification because it never obtained a mining permit for its operation. We are unconvinced.

The latter argument has no merit. Plaintiff was issued a permit to mine on lots thirteen and then-fifteen in 1987.

In turning to the status of the operation, we must consider the applicable statute. Under the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -92, a "nonconforming use is 'a use or activity which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision or amendment.'" Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 106 (2011) (quoting N.J.S.A. 40:55D-5). "Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof." N.J.S.A. 40:55D-68.

In its 2002 decision, the Law Division found that mining was a preexisting nonconforming use on lot thirteen and the old lot fifteen. Therefore, the trial court here did not err in finding that mining on lots thirteen and fifteen was entitled to protection as a pre-existing nonconforming use.

Plaintiff presented ample evidence showing its mining operations were taking place long before the passage of the 1990 Ordinance. Plaintiff also presented proofs of its continuing operations, including the Township's purchase of various sands in 2013 and a summary of its output from 2013 to 2018. We

are satisfied plaintiff established "the existence of a non-conforming use as of the commencement of the changed zoning regulation and its continuation afterward." S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment for Borough of Stratford, 373 N.J. Super. 603, 613 (App. Div. 2004) (citing N.J.S.A. 40:55D-68; Ferraro v. Zoning Bd. of Keansburg, 321 N.J. Super. 288, 291 (App. Div. 1999)).

For the same reasons, plaintiff meets the definition of existing resource extraction operation under the 2015 Ordinance. It was lawfully operating a mining operation at the time the 2015 Ordinance was adopted and had done so long before 2006.

In light of the court's conclusion that the mining operation qualified as a pre-existing nonconforming use, it followed that the Board's denial of the mining permit on that basis was arbitrary, capricious and unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4124-19